**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **JOHN MARSHALL LAW SCHOOL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No.  16 C 5753** |
| ) | |
| **NATIONAL UNION FIRE INSURANCE** ) | |
| **COMPANY OF PITTSBURGH, PA,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John Marshall Law School (JMLS) alleges that its liability insurer National Union

Fire Insurance Company wrongfully denied it coverage in connection with an

employment discrimination lawsuit against JMLS.  JMLS has filed a three-count

complaint against National Union.  Count 1 is a claim for breach of contract; JMLS

alleges that National Union breached its obligations under the insurance policy by

denying coverage for the lawsuit and refusing to advance defense costs.  In Count 2,

JMLS seeks a declaratory judgment that National Union is estopped from raising policy

defenses due to its wrongful denial of coverage.  Count 3 is a claim for vexatious refusal

to pay under an Illinois statute, 215 ILCS 5/155.   National Union removed this lawsuit to

federal court based on the diversity of citizenship and has now moved to dismiss

JMLS's complaint for failure to state a claim.

### Background

On December 31, 2013, Joel Cornwell, a JMLS professor, filed an employment

discrimination lawsuit against JMLS alleging discrimination based on disability. Before filing suit in court, Cornwell filed a charge with the Equal Employment Opportunity Commission on October 30, 2013, naming JMLS as the respondent. The EEOC issued Cornwell a "Notice of Right to Sue" on November 6, 2013. The notice stated that any lawsuit by Cornwell under the Americans with Disabilities Act (or other statutes) had to be filed within 90 days of his receipt of the notice, or his right to sue based on his EEOC charge would be lost. Def.'s Mot. to Dismiss, Ex. 2 (Cornwell lawsuit), Ex. B. The EEOC sent a copy of the notice to JMLS.

National Union issued JMLS a liability insurance policy for the period from November 15, 2013 through November 15, 2014. The policy was a "claims made" policy, meaning that it covered losses "arising from a Claim first made against [the] Insured during the policy period . . . ." Case No. 16 C 5753, dkt. no. 1-1 at 43. JMLS received Cornwell's complaint on January 8, 2014, and it notified its insurance broker of the lawsuit on February 14, 2014. The broker then reported the suit to National Union. On April 21, 2014, National Union sent JMLS a letter denying coverage. JMLS ended up settling Cornwell's lawsuit.

In the present lawsuit, JMLS alleges that the denial of coverage was wrongful because Cornwell's claim—which, JMLS says, is the lawsuit that he filed in court—was first made within the period covered by the National Union policy. National Union contends that Cornwell's claim was first made when he filed his EEOC charge and that this happened outside the policy period. It has moved to dismiss JMLS's breach of contract claim on this basis and has also moved to dismiss JMLS's other claims.

**Discussion**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the plaintiff's allegations as true and draws reasonable inferences in the plaintiff's favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). The plaintiff is required to allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A.     Breach of contract claim**

National Union seeks dismissal of JMLS's breach of contract claim on the ground that Cornwell's claim was "first made" outside the policy period and thus JMLS is not entitled to coverage. Resolution of this question involves construction of the insurance policy, which is a question of law. *Traveler's Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 757 N.E.2d 481, 491 (2001). A court reads the policy as a whole and gives the policy's clear and unambiguous terms their plain and ordinary meaning. *Id.* at 293, 757 N.E.2d at 491. "Conversely, if the language of the policy is susceptible to more than one meaning, it is considered ambiguous and will be construed strictly against the insurer who drafted the policy and in favor of the insured." *Id.* A court should not, however, strain to find an ambiguity where none exists. *Id.*

Cornwell's claim is covered, if at all, under the Employment Practices Liability Coverage section of the National Union policy. That section states:

> This policy shall pay the **Loss** of each and every **Insured** arising from a **Claim** first made against such **Insured** during the **Policy Period** . . . and

3

reported to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act. The Insurer** shall, in accordance with and subject to Clause 4 of this **Coverage Section** advance **Defense Costs** of such **Claim** prior to its final disposition.

Case No. 16 C 5753, dkt. no. 1-1 at 43. Each of the terms in bold print is defined in the policy, including in Endorsement 6, which amends certain definitions. The pertinent section of that endorsement defines "claim" as follows:

### III. AMENDMENTS TO THE EPL COVERAGE SECTION

1. In Clause 2, "DEFINITIONS" of the EPL Coverage Section, Paragraphs (a) and (c) are deleted in their entirety and replaced with the following:

(a) **"Claim"** means:

(i) a written demand for monetary relief or non-monetary relief (including any request to toll or waive any state of limitations); or

(ii) a civil, administrative, regulatory or arbitration proceeding for monetary relief or non-monetary relief which is commenced by:

(1) service of a complaint or similar pleading;

(2) return of an indictment, information or similar document (in the case of a criminal proceeding); or

(3) receipt or filing of a notice of charges; or

(iii) an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or Office of Federal Contract Compliance ("OFCCP"), or similar state, local or foreign agency, which is commenced by the filling of a notice of charges, service of a complaint or similar document of which notice has been given to the **Insured**.

However, in no event shall the term **"Claim"** include any labor or grievance proceeding which is subject to a collective bargaining agreement.

*Id.* at 68-69.

The parties' present dispute does not turn on whether Cornwell's lawsuit is a "claim" within the meaning of the policy. It quite plainly was, under section III.1.(a).(ii) of Endorsement 6. And the same is true of Cornwell's EEOC charge, under section III.1.(a).(ii) or (iii).[1]

Rather, the question is whether Cornwell's lawsuit is a claim "first made" within the policy period. That is essentially the same as asking whether the EEOC charge and the lawsuit are two claims as the policy defines that term, or just one. If they are the same claim—in other words, if Cornwell is considered to have a single claim, first made when he filed the EEOC charge—National Union is entitled to dismissal of the suit. If they are different claims, then National Union is not entitled to dismissal.

The term "first made" is not defined in the insurance policy. That is not necessarily fatal to National Union's argument. If the policy language is unambiguous, then the policy is applied as written. *See, e.g., Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). But as noted earlier, if a policy term is ambiguous, the ambiguity is resolved against the insurer and in favor of coverage. *Id.* at 451. "Whether an ambiguity exists turns on whether the policy language is susceptible to more than one reasonable interpretation." *Id.*

JMLS argues that because each alternative definition of "claim" in the policy is separated by the word "or," the disjunctive indicates that a lawsuit (subparagraph ii) is a

---

[1] The Court notes that the EEOC charge, on its face, is neither a demand nor a proceeding for monetary or non-monetary relief; the charge contains no request for relief but simply states an accusation. *See* Charge of Discrimination Form, https://www.eeoc.gov/eeoc/foia/forms/upload/form_5.pdf (last visited Dec. 26, 2016). The EEOC can, ultimately, file a judicial or administrative case itself and pursue relief for the claimant, or it can attempt to get the claimant relief via mediation, but neither of those things appears to have happened in Cornwell's case.

separate claim from an administrative investigation begun by the filing of a charge (subparagraph iii).   For its part, National Union says that because the filing of an EEOC charge in the scenario presented in Cornwell's case is a prerequisite to filing suit in court, the two are the same claim.

The flaw in National Union's argument is that it is not tied to the policy language. The policy language does not provide how one determines, in a situation there are two legal proceedings that arise from the same underlying conduct, when a claim is considered to have been "first made."  National Union is certainly right that Cornwell had to file an EEOC charge and get a right to sue letter before he could sue in court, but that by itself does not mean that under the insurance policy as National Union drafted it, there is a single "claim" that was first made when Cornwell filed the EEOC charge. Although a lawsuit must be preceded by an administrative charge, the converse is not true:  not every administrative charge ends up as a lawsuit.  Some charges are abandoned, some result in a settlement, and so on.  To put it another way, an EEOC charge does not inevitably lead to a lawsuit in court.

If the definition of "claim" contained language similar to that quoted in one of the cases relied on by National Union, *National Union Fire Insurance Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305 (7th Cir. 1993), National Union would have a better argument.  In that case, as described by the court of appeals, the policy said that a claim is first made during the policy period if, during that period, either a claim alleges damages that are payable under the policy, or the insured acquires knowledge or becomes aware of an act or omission that could reasonably be expected to give rise to a claim.  *See id.* at 306.  But National Union cites no such language in the present

6

policy. And, as the Court has indicated, National Union cites no policy term defining when a claim is "first made," which is the critical language in this case.

The Court finds persuasive the decision in *Lodgenet Entertainment Corp. v. American International Specialty Lines Insurance Co.*, 299 F. Supp. 2d 987 (D.S.D. 2003), which dealt with a similar scenario and virtually identical insurance policy terms. In *Lodgenet*, as in this case, an EEOC charge was filed against the plaintiff before the term of the claims-made liability policy issued by the defendant, but the plaintiff notified the defendant only after a lawsuit was filed in court during the policy's term. The policy, like the one in this case, provided coverage for a "claim first made" during the policy term, and it defined "claim" in a way virtually identical to the definition in the present policy. *See id.* at 990, 991. The court noted that the policy contained no language indicating that all proceedings arising out of the same facts are considered the same claim and therefore looked to other policy provisions to resolve the point. It examined two particular policy provisions. One provision said, in substance, that if written notice of a claim has been given, then "any claim which is subsequently made" arising out of the same facts is considered to have been made at the time the original notice was given. The court concluded that this language contemplated that two *different* "claims" could arise from the same set of facts. *Id.* at 992. The court also identified a policy exclusion stating that the insurer is not liable in connection with a claim against an insured arising from the same employment practices violation alleged in a claim reported in an earlier policy term. Again, the court concluded, this provision contemplated that multiple "claims" could arise from the same set of facts. *Id.* at 992-93. The court noted that given the purpose of a claims-made liability policy, "immediate

notice of the *possibility* of a claim is generally required," but it concluded that the policy at issue "does not require notice of the *possibility* of a claim." *Id.* at 993. Comparison of the general purpose of a claims-made policy against the language of the policy at issue, the court determined, revealed an ambiguity. *Id.* This required the court to construe the disputed policy term against the insurer—in the same way that JMLS advocates in the present case. *Id.*

*Lodgenet Entertainment* was decided under South Dakota law, but National Union has offered no basis to believe that insurance policies are interpreted differently in Illinois than they are in South Dakota. And essentially the same policy provisions that the court in *Lodgenet Entertainment* cited exist in this case. The "Notice/Claim Reporting Provisions" section of JMLS's policy states that

> [i]f written notice of a Claim has been given to the Insurer pursuant to
> Clause 7(a) above, then any Claim which is subsequently made against
> the Insureds and reported to the Insurer alleging, arising out of, based
> upon or attributable to the facts alleged in the Claim for which such notice
> has been given, or alleging any Wrongful Act which is the same as or is a
> Related Wrongful Act to that alleged in the Claim of which such notice
> has been given, shall be considered made at the time such notice was given.

Case No. 16 C 5753, dkt. no. 1-1 at 30. This term, like the parallel term in *Lodgenet Entertainment*, specifically contemplates that multiple "claims" can arise from the same facts. As the court in that case stated, "there would be no need for [this term] if the phrase 'a Claim' was intended to encompass all types of proceedings arising out of the same facts." *Lodgenet Ent'mt*, 299 F. Supp. 2d at 992. The policy in this case also contains an exclusion, like the one addressed in *Lodgenet Entertainment*, stating that the insurer is not liable to pay for a loss "in connection with a Claim made against an insured . . . alleging, arising out of, based upon or attributable to the facts alleged, or to

the same or Related Wrongful Act alleged or contained in any Claim" reported under an earlier policy of which the current policy is a renewal. Case No. 16 C 5753, dkt. no. 1-1 at 27. This term similarly contemplates that multiple "claims" can arise from the same facts.

In short, there is no question that the policy reasonably may be read as contemplating that an administrative investigation/charge and a lawsuit arising from the same facts are two different claims. Indeed, in the Court's view, this is the most reasonable reading of the policy. At best, from National Union's perspective, the policy is ambiguous in this regard, as the court in *Lodgenet Entertainment* concluded. But even were this the case, the Court would be required to construe the policy against National Union, in favor of coverage.

To recap: (1) there is no provision defining when a claim is "first made"; (2) there is no provision stating or hinting that multiple claims arising from the same facts are considered a single "claim"; (3) there are provisions that specifically contemplate that more than one "claim" can arise from a set of facts; and (4) an administrative proceeding like Cornwell's EEOC charge and his subsequent lawsuit are *both* "claims" under the policy's definition of that term. JMLS sought coverage for the lawsuit, which the complaint adequately alleges was a claim first made within the policy's term.

For these reasons, the Court declines to dismiss JMLS's breach of contract claim.

## B.    Declaratory judgment claim

In Count 2, JMLS seeks a declaratory judgment that National Union is estopped from raising policy defenses due to its wrongful denial of coverage for the Cornwall

lawsuit. Under Illinois law, an insurer that contends that a lawsuit potentially alleging

coverage is not actually covered under a policy that includes a duty to defend the

insured

> may not simply refuse to defend the insured.  Rather, the insurer has two
> options: (1) defend the suit under a reservation of rights or (2) seek a
> declaratory judgment that there is no coverage.  If the insurer fails to take
> either of these steps and is later found to have wrongfully denied
> coverage, the insurer is estopped from raising policy defenses to
> coverage.

*Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150, 708 N.E.2d

1122, 1134-35 (1999).

National Union contends that the policy does not include a duty to defend.  It

cites language in the policy stating that National Union "does not assume any duty to

defend.  **The Insureds** shall defend and contest any **Claim** made against them."  Case

No. 16 C 5753, dkt. no. 1-1 at 45.  The same term goes on to say, however, that

> [n]otwithstanding the foregoing, the **Insureds** shall have the right to tender
> the defense of the **Claim** to the **Insurer**, which right shall be exercised in
> writing . . . pursuant to the notice provisions of Clause 7 of the General
> Terms and Conditions.  This right shall terminate if not exercised within
> thirty (30) days of the date the **Claim** is first made against an **Insured**,
> pursuant to Clause 7 of the General Terms and Conditions.

*Id.*  This language is sufficient under Illinois law to give rise to a duty to defend.  *See*

*Uhlich Children's Advantage Network v. Nat'l Union Fire Co. of Pittsburgh, PA*, 398 Ill.

App. 3d 710, 721, 929 N.E.2d 531, 542 (2010).

In its reply brief, National Union argues that JMLS did not give timely notice of

Cornwell's lawsuit under the provision just quoted.  This argument is forfeited for

purposes of the motion to dismiss because it was not made in National Union's opening

brief.

**C.      Vexatious refusal to pay claim**

National Union argues that Count 3, JMLS's claim for vexatious refusal to pay, fails to state a claim. The Court disagrees; JMLS has sufficiently alleged that National Union had no *bona fide* basis to deny coverage.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss [dkt. no. 15] and directs defendant to answer the complaint by no later than January 9, 2017. Rule 26(a)(1) disclosures are to be made by January 13, 2016. The case is set for a status hearing on January 19, 2017 at 8:30 a.m. for the purpose of setting a discovery and pretrial schedule. Counsel are directed to confer to attempt to agree on a schedule to propose to the Court.

Date:  December 26, 2016

_____
MATTHEW F. KENNELLY
United States District Judge